FILED'06 SEP 22 1243USDC-ORP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| WALTER G. GAUTHIER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 04-290-SU |
| | ) | |
| v. | ) | |
| | ) | |
| EASTERN OREGON CORRECTIONAL | ) | **OPINION** |
| INSTITUTION, | ) | |
| | ) | |
| Defendant. | ) | |

**SULLIVAN, J.**

Having received evidence and having considered the arguments, pleadings, and submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1.  Plaintiff was hired as a Corrections Officer by the Eastern Oregon Correctional Institution (EOCI) on March 31, 2003.

2.  EOCI terminated plaintiff's employment on May 2, 2003.

1 - OPINION

3.   Plaintiff filed his complaint alleging, inter alia, that EOCI had wrongfully terminated him from his position as a Correctional Officer because of a false perception that he suffered a mental or physical disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

4.   On May 25, 2006, a jury rendered a verdict in favor of plaintiff on the issue of liability and awarded non-economic damages in the amount of $1.00.

5.   The parties had agreed prior to trial that plaintiff's economic damages would be determined by the court.

6.   A continuation of the trial was held on June 28, 2006, for the purpose of determining plaintiff's economic damages, including back pay, front pay, and special damages, based on the stipulations of the parties, the evidence presented, and the arguments of counsel.

7.   The undisputed evidence is:

a.   Plaintiff worked at Wackenhut Corrections Corporation briefly in 2003 and earned $2,203;

b.   Plaintiff commenced working for the Missouri Department of Corrections in September, 2003;

c.   Plaintiff had moving expenses in the amount of $6,668;

d.   Plaintiff's base salary for purposes of calculating back pay from EOCI had he not been terminated

would have been as follows:

$2,549 per month from May, 2003 through December 2005,

$2,633 per month from January, 2006 through March,
2006, and

$2,760 from April 2006 through May 15, 2006.

e.   Plaintiff's base salary for purposes of
calculating front pay from EOCI had he not been terminated
is as follows:

$2,760 per month from May 16, 2006 through November,
2006,

$2,815 per month from December, 2006 through March,
2007, and

$3,083 per month from April, 2007 through March 31,
2008.

f.   Plaintiff would have received two lump sum bonuses
from EOCI in the amounts of $350 in January, 2005, and $125
in February, 2006;

g.   Plaintiff's projected retirement date is March,
2008.

8.   The shift differential at EOCI is $.50 per hour and is
paid to employees who begin work between the hours of noon and
3:00 a.m.   Plaintiff worked graveyard shift when he began
employment in Oregon, has worked graveyard and night shift in
Missouri, and would have worked a shift that paid a shift

3 - OPINION

differential in Oregon had he continued to work in Oregon.
Plaintiff's motivation for working and his living situation
support his decision to work a shift that provides a shift
differential.  While a shift providing for a shift differential
is not guaranteed at EOCI, the evidence revealed that it was more
likely than not that plaintiff could have worked a shift
providing a shift differential had he stayed at EOCI until his
projected retirement date in March, 2008.

    9.  Overtime pay at EOCI is calculated on an employee's base
pay and increases as the base rate increases.  For purposes of
calculating overtime pay plaintiff would have earned had he
remained at EOCI, $22.13 per hour from May, 2003 through
December, 2005, is the amount indicated by Patricia Martin of the
Oregon Department of Corrections as the correct overtime rate.
Ms. Martin did not provide rates for overtime based upon
increases in base salary.  The rates, however, are calculated
based upon a formula used by EOCI including 176 hours worked per
month and payment of 1.5 of an employee's hourly rate.  As such,
while EOCI would be able to calculate this figure with more
precision, the figures provided by plaintiff are reasonably
accurate for the time periods after December, 2005.  The overtime
rate for January, 2006 through March, 2006 is $22.78 per hour,
for March, 2006 through May 15, 2006 is $23.88 per hour for
purposes of calculating back pay.  The overtime rate for May 16,

4 - OPINION

2006 through November, 2006 is $23.88 per hour; for December, 2006 through March, 2007 is $24.35 per hour; and for April, 2007 through March, 2008 is $26.67 per hour.

10.  Overtime is not guaranteed at EOCI.  There are a number of factors that are considered in determining who will be awarded overtime opportunities.  Seniority is important but is not the sole factor is awarding overtime hours.  Other factors include staffing, the number of inmates, safety concerns, and emergencies.  While plaintiff testified that he would have worked more than 32 hours of overtime per month had he stayed at EOCI, he would not have been guaranteed any amount of overtime.  Ms. Martin concluded that 32 hours of overtime is a "high average" and that 14 hours of overtime per month is a "reasonable average."  Based upon an analysis by EOCI of the number of overtime hours worked by employees identified as having been hired at approximately the same time as plaintiff who are still employed at EOCI, a reasonable average of overtime hours that plaintiff could have worked through March 2008, is 14.37 per month.

11.  Plaintiff's actual earnings based upon his pay stubs and tax records from Missouri Department of Corrections from September, 2003 through May 15, 2006, are $66,942.53.  This includes payment for overtime and shift differential.  Based upon plaintiff's most current pay rate including shift differential

and any overtime in 2006, plaintiff will earn $2,254 per month
for the next 22.5 months or $50,715.  Missouri will increase
plaintiff's pay in July, 2006 by 8%, including a 4% cost of
living increase and a 4% step increase.  The amount projected for
both increases is $3,735.  Plaintiff's projected income from
Missouri through March, 2008 is $54,450.

12.  Missouri pays a shift differential of $52.00 per month.
Based upon plaintiff's record of employment, his lifestyle, and
his professed desire to maximize his pay for retirement purposes,
it is reasonable to conclude that plaintiff will work shifts at
the Missouri Correctional Center that will earn him a shift
differential and that this amount is included in his projected
earnings.

13.  Plaintiff has worked a limited amount of overtime in
Missouri and is not planning to work overtime in Missouri unless
there is a necessity for him to do so.  Plaintiff disagrees with
the method used by his employer in Missouri in paying for
overtime accrued by employees.  The Department of Corrections in
Missouri has a complex system of calculating and paying overtime
which results in a disincentive to employees to work overtime.
However, an employee in Missouri is always ultimately credited
for overtime worked and given "comp" time or time off or actual
overtime pay if the employee has put in overtime.  Plaintiff has
already been paid for overtime he has worked through trial.

Plaintiff does not plan to work a significant amount of overtime
for the remainder of his tenure in Missouri.  "Comp" time is not
the same as receiving payment for overtime worked.

14.  At the court's instruction, the parties have calculated
plaintiff's back pay and front pay based upon the above findings
and figures.

15.  Based upon the findings above and the calculations of
the parties, plaintiff's back pay is $39,645.47.

16.  Based upon the findings above and the calculations of
the parties, plaintiff's front pay is $19,142.00

17.  Plaintiff's front pay will not be reduced to present
value.  A 2% cost of living increase beginning in December, 2006
has been included in his front pay from EOCI.  No other cost of
living increase is projected.  This cost of living increase is
not enough to justify a reduction to present value using the
figures submitted for such a reduction.  Nor do the amounts
projected for plaintiff's income from Missouri justify a
reduction to present value.

18.  Plaintiff is entitled to recover Oregon retirement
benefits, including "full formula lifetime pension benefits" and
an Individual Account Program benefit, offset by retirement
benefits he will receive from Missouri.  Oregon retirement
benefits are calculated based upon his wages from EOCI.
Missouri retirement benefits are calculated based upon

plaintiff's election of retirement payments in the amount of $217 per month over his projected life expectancy.  Reduced to present value, this amount is $22,649.  The lump sum awarded for retirement benefits from Oregon should be reduced to present value, as plaintiff will have the benefit of those funds prior to retirement.  At the court's instruction, back pay and front pay figures for Oregon income were calculated by the parties and submitted to plaintiff's expert, Mr. Creveling, for purposes of calculating Oregon retirement benefits and reducing those benefits to present value.  Defendant's expert, Mr. Haynes, has had an opportunity to review the figures submitted by plaintiff and has no objection to the amount as calculated by Mr. Creveling.  Plaintiff would have received retirement benefits in Oregon in the amount of $34,988.  The total retirement benefit is the difference between the amount plaintiff would have received in Oregon reduced to present value and the amount he will receive in Missouri reduced to present value.  That amount is $12,339.

### CONCLUSIONS OF LAW

The jury found that defendant had violated the Rehabilitation Act by terminating plaintiff because of perceived age-related disability.  An award of damages under the Rehabilitation Act, which incorporates Title VII's remedial provisions, see 29 U.S.C. § 794a, "must comport with Title VII's 'central statutory purposes of eradicating discrimination

8 - OPINION

throughout the economy and making persons whole for injuries
suffered through past discrimination.'" McLean v. Runyon, 222
F.3d 1150, 1155 (9th Cir. 2000) (quoting Albemarle Paper Co. v.
Moody, 422 U.S. 405, 421 (1975)). Here, plaintiff is entitled to
an award of both front and back pay. This court's computation of
damages is a finding of fact. See Amantea Cabrera v. Potter, 279
F.3d 746, 750 (9th Cir. 2002).

Awards of back pay are "'determined by "measuring the
difference between actual earnings for the period and those which
[the plaintiff] would have earned absent the discrimination by
defendant."'" Gotthardt v. Nat'l R.R. Passenger Corp., 191 F.3d
1148, 1158 (9th Cir. 1999) (quoting Horn v. Duke Homes, 755 F.2d
599, 606 (7th Cir. 1985) (quoting Taylor v. Philips Indus., Inc.,
593 F.2d 783, 786 (7th Cir. 1979) (per curiam)). The plaintiff
"bears the burden of 'proving the damages caused her.'" Id.
However, the employer bears the burden of showing that the
plaintiff failed to mitigate his damages. Odima v. Westin Tucson
Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995). In calculating an
award of back pay, the court should subtract "[a]ny wages the
plaintiff actually earned after termination, plus the amount the
plaintiff would have earned if he had made reasonable efforts."
Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1345 (9th
Cir. 1987).

Front pay is an award of future lost earnings to make the

victim of employment discrimination whole.  See Cassino, 817 F.2d
at 1346.  The plaintiff bears the burden of providing "the
essential data necessary to calculate a reasonably certain front
pay award."  Peyton v. DiMario, 287 F.3d 1121, 1129 (D.C. Cir.
2002) (citations and quotation marks omitted).  An award of front
pay is appropriate when, as here, it would be impossible to
reinstate the plaintiff.  See Fadhl v. City and County of San
Francisco, 741 F.2d 1163, 1167 (9th Cir. 1984).

        In calculating future damages, the court may calculate the
difference between the market rate of interest and the
anticipated rate of inflation, and discount by the resulting
interest rate; include the effects of inflation and discount by
the market interest rate; or use a zero discount rate.  Nunsuch
ex rel. Nunsuch v. United States, 221 F. Supp. 2d 1027, 1037 (D.
Ariz. 2001) (citing Colleen v. United States, 843 F.2d 329, 331
(9th Cir.1987)).  I conclude that under the facts here, the third
option, the zero discount rate, is appropriate for the award of
front pay.

### CONCLUSION

        The amount to be awarded plaintiff for his economic damages
is as follows:

| | |
|---|---|
| Back pay | $39,645.47 |
| Front pay | 19,142.00 |
| Retirement benefits | 12,339.00 |

Moving expenses            6,668.00

TOTAL                     77,794.47

Judgment for plaintiff shall be entered in the amount of $77,794.47.

DATED this 21st day of September, 2006.

PATRICIA SULLIVAN
UNITED STATES MAGISTRATE JUDGE

11 - OPINION